SHEA v. GREAT CAMP OF KNIGHTS OF MACCABEES FOR NEW YORK.

(Supreme Court, Appellate Division, Fourth Department. June 18, 1898.)

LIFE INSURANCE—FALSE ANSWERS IN APPLICATION.
In an application for a certificate in a benefit order deceased stated, in answer to questions as to his habits, that he did not drink habitually, and was not addicted to the excessive or intemperate use of liquor. The application contained an agreement that, if any of the answers were fraudulent and untrue, they should vitiate the certificate. In an action on the certificate defendant introduced evidence showing that previous to the date of the application deceased had been arrested 14 different times in a state of intoxication, and was kept in jail on these occasions, in all, 72 days, which evidence was not denied. *Held*, that a verdict for plaintiff was against the weight of the evidence.

Appeal from trial term, Monroe county.

Action by Michael H. Shea, as administrator, etc., against the Great Camp of the Knights of Maccabees for New York. From a judgment in favor of plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Daniel J. Kenefick, for appellant.
Frederick A. Mann, for respondent.

HARDIN, P. J. In the application signed by the insured on the 10th of November, 1893, there was contained the following: "(11) Do you drink wine, spirit or malt liquors daily or habitually?" "No." "If so, state what you drink, and daily average amount. (Do not use the word 'moderate.')" "A glass of ale occasionally." "(12) Have you ever been addicted to the excessive or intemperate use of these liquors?" "No." To the fourteenth question, "If intoxicated within the last year, how many times?" there was no answer. Following these questions and others was a declaration as follows:

"I hereby declare that the above are fair and true answers to the foregoing questions, and I hereby agree that these statements in this application, and the laws of the Supreme Tent of the Knights of the Maccabees of the World and of the Great Camp for New York shall form the basis of this contract for endowment; that any untrue or fraudulent answers, any omissions of fact in regard to my health, age, occupation, personal habits, or neglect to pay any assessment, * * * shall vitiate my beneficiary certificate, and forfeit all payments made thereon. * * *"

At the close of the evidence the defendant asked the court to direct the jury to find a verdict for the defendant of no cause of action. The motion was denied, and an exception was taken. After a verdict was received for the plaintiff, a motion was made for a new trial on the minutes upon all the grounds specified in section 999 of the Code of Civil Procedure. The motion was denied, and there is an appeal from the order denying the motion. We are called upon to consider whether the verdict is against the evidence. To answer that question we must have reference to the evidence. Upon looking into the evidence we find the following:

Patrick Caufield testified that he was a member of the police force, and had been for 19 years; that he knew John C. Birmingham in his lifetime, and had known him for 20 years. He testified: "I think there was another occasion, on August 7, 1893, when I arrested him in the same place,—police station. At that time he appeared to be under the influence of some drug or other. I could not say what it was. * * * Q. Did he appear to be under the influence of liquor? A. He appeared like a man that would be under apparent drunkenness." John Cawthra testified that he was one of the deputy sheriffs of Monroe county and had been for 15 years or over, and that in his official capacity he had charge of the jail of the county; that he knew John C. Birmingham in his lifetime; that he first became acquainted with him at the jail September 12, 1887. "The next time was July 12, 1889; the next, November 21, 1889; the next, January 13, 1890; the next, July 3, 1890; the next, July 21, 1890; the next, January 1, 1891; the next, January 4, 1892; that was the next after January 1, 1891; the next was April 3, 1892; the next, December 28, 1892; * * * the next was February 3, 1893; the next, June 17, 1893; the next, August 5, 1893. Q. What was your observation as to his condition as to sobriety? A. Each time that he was brought in he showed signs of being under the influence of drink." This witness then gave the length of time that Birmingham was kept there on these occasions, amounting in

all to 72 days. "Q. Are you able to state, from your observation of his appearance and talk with him on these occasions, whether or not he was intoxicated? A. I believe he was." On cross-examination the witness testified: "I think, if I had observed him on the street in the same condition that he was in when brought there, it would have occurred to me that he was intoxicated." The witness Michael Fitzpatrick testified that he was a member of the police force, and that he helped take Birmingham into custody on July 6, 1893; that at that time he was intoxicated. The witness Stewart Church testified that he was the stationary engineer of the jail, and knew Birmingham, and had seen him at the jail in 1892 and 1893 about four or five different times. "Q. What was his condition as to sobriety at that time? A. When he was brought there, he was always in an intoxicated condition."

To meet the testimony offered by the defendant in respect to the habits of the deceased for intoxication, several witnesses were called by the plaintiff who had seen the deceased on sundry occasions when he was free from the influence of intoxicating liquors, and who testified in a general way to his habits. Several of the witnesses, however, admitted that they had seen the deceased under the influence of liquor, and several of them gave facts and circumstances tending to support the evidence of the defendant. We are of the opinion that the finding of the jury is against the weight of the evidence. In the twelfth question the deceased was asked, viz.: "(12) Have you ever been addicted to the excessive or intemperate use of these liquors?" (wine, spirit or malt liquors), and the deceased answered the question "No." We are of the opinion that, as the evidence was presented at the trial, the answer was false, and that the verdict of the jury in favor of the plaintiff is against the weight of evidence, and that the order refusing a new trial on the minutes should be reversed, and the verdict set aside.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.